**CREAMETTE CO. v. CONLIN et al.**

No. 13424.

United States Court of Appeals,
Fifth Circuit.

July 19, 1951.

Rehearing Denied Oct. 17, 1951.

Frank A. Whiteley, Minneapolis, Minn., G. W. Botts, Jacksonville, Fla., for appellant.

John Marshall Green, Ocala, Fla., J. Edwin Holsberry, Pensacola, Fla., for appellees.

Before HOLMES, McCORD, and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

In the trial Court the appellant sought to enjoin the use by the defendants of the word "Creamette" as a trademark and tradename for a frozen sweet or dessert. The complaint was based both upon the claim of infringement of the plaintiff's registered trademark "Creamette" or its variant "Creamettes", and upon the claim of unfair competition at common law. The plaintiff alleged that the defendants, with full knowledge of its registration and use of the tradename, which was established in the minds of the public as representing plaintiff's product, had, with fraudulent intent, traded upon the plaintiff's reputation and good will, and, with like intent of passing off defendants' goods as the goods of the plaintiff, and with full knowledge of plaintiff's rights and that its trademark was the dominant part of its corporate name, had used plaintiff's trademark upon, and in connection with, the sale of "dairy products including forms of ice cream" and as its business name. It was alleged that such use was likely to cause confusion in the trade as to the source of the goods, and confuse and deceive purchasers of, and in connection with, the sale of the said dairy products. These allegations were denied by the defendants. The plaintiff likewise pleaded other instances where it had been successful in preventing infringement of its trademark by others. Two of these went to trial.[1]

The trial Court, after a full hearing, found that the plaintiff had failed "to carry the burden of proof of the allegations of its complaint which the law imposes upon it." Other findings were made [2] upon which the Court adjudged that the injunction should be denied. Plaintiff has appealed, contending here that the Court clearly misconceived and misapplied the law applicable to the facts of the case so that its judgment is manifestly contrary to law. We do not sustain the contention of the appellant.

It was clearly shown that the defendants' business of manufacturing the frozen sweet or dessert by a patented machine located upon the premises and selling it upon such premises,—a small building, or "stand",—was not "in commerce". Thereby questions of infringement of the registered trademark were removed from the case, and it remains one based solely upon the claim of unfair competition. However, this did not render it improper for the appellant to show, as it

1. The Creamette Co. v. Overland Candy Corp., 93 F.Supp. 90, District Court of the United States, Northern District of Illinois, Eastern Division; Creamette Co. v. Minnesota Macaroni Co., D.C., 74 F. Supp. 224.

2. "There is no direct testimony that any of the defendants ever heard of plaintiff or the products sold under its two trademarks prior to the registration by the Conlin defendants of their trademark Creamette with the Secretary of State of Florida. The evidence shows that all the defendants do strictly an intra-state business; that the product manufactured and sold by them is not sold at any place where any of plaintiff's food products are sold; That the frozen dessert manufactured and sold by defendants is of a uniform quality, sold on the premises where it is manufactured, to the retail trade, for immediate consumption; that the trademark adopted by the Conlin defendants is descriptive of the product manufactured and sold by the defendants and plaintiff's evidence fails to show a single instance of unfair competition or of profit to the defendants by reason of the good will plaintiff claims to have earned for the products sold by it under its trademark.

"As pointed out above, counsel for plaintiff conceded at the close of the cases that it did not have a monopoly in the use of its trademark Creamette under any Federal law, but that it relied for its claim of a monopoly in the use of said trademark upon its allegation of unfair competition and infringement of the Common Law right of the plaintiff in said trademark."

did, that the appellant and its predecessor, Mother's Macaroni Company, had used the trademark Creamette, and the plural Creamettes, since prior to August 15, 1912, at which time the macaroni company registered the trademark Creamette with the United States Patent Office for use on its macaroni products. On later dates appellant registered with the United States Patent Office such trademarks for use on other food products which were specifically itemized on the registration certificates. None of these included a frozen dessert or ice cream product. These registrations were re-published under the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq. At all times since August, 1912, appellant has sold its products under these tradenames in various trade territories in the United States and Canada, but has sold only macaroni and spaghetti in Florida. These latter products constitute 99 per cent of the appellant's total sales. Appellant has carried on an extensive advertising campaign during the years, some of it in Florida (since 1946). Appellant first introduced its macaroni to the trade in Florida under the name Creamettes in May, 1946, and it has continued to sell its macaroni and spaghetti in Florida under the trademarks Creamette and Creamettes since that time. On July 22, 1949, appellant applied for, and secured, from the Secretary of State of the State of Florida registrations of these trademarks for all products previously registered with the United States Patent Office.

Appellee Conlin first adopted the tradename Creamette in October, 1947, at which time he filed application with the Secretary of State of the State of Florida for, and secured registration of, the trademark "Creamette" for frozen desserts. He opened his first ice cream "stand", using this name as his tradename, in December, 1947. Testimony by, and on behalf of, the defendants, that appellee Conlin had never heard of appellant's products or the use of the tradename by it until some time in 1948, when Conlin observed the products advertised in a grocery store, and of the other appellees to the effect that they had never heard of appellant company, its products or tradename prior to the receipt of correspondence shortly prior to the institution of the litigation was not materially controverted, and was accepted by the trial Court. Appellant introduced no evidence to support the allegations of its complaint that defendants had adopted and were using its trademark with fraudulent intent. It is not shown that there has been any confusion as to the source of the products in question, nor was any evidence introduced to support the view that there was likely to be any such confusion. The products of the appellant and appellees are distinctly different and are similar only in that they are both food products. Even in this respect, however, they are dissimilar in that appellant's macaroni and spaghetti must be cooked and prepared prior to consumption, while appellees' product is ready to eat when sold, and is a novelty or dessert.

█ We thus approach consideration of the correctness of the judgment of the trial Court from the standpoint that no actual bad faith or wrongful intent upon the part of the defendant has been shown. The question remaining is whether the circumstances disclosed by the record discloses a case where the Court is required to hold as a matter of law that the defendants' use of the word Creamette is wrongful and constitutes unfair competition which requires the grant of an injunction to prevent its continuance.

█ Our examination of the Florida authorities discloses that the law of that State applicable to claims of, and protection from, unfair competition are to the same effect as those prevailing in American jurisprudence generally. This is illustrated by an examination of the cases cited with approval by the Florida Supreme Court in Lumbermen's Mutual Casualty Co. v. Lumber Mutual Casualty Ins. Co. of New York, 154 Fla. 367, 17 So.2d 615. It appears from consideration of the authorities that there is not so much dispute and difference as to the fundamental law, as there is in the application, which the Courts make in particular cases, to

the facts then being considered. Though the broad question is strenuously urged by the appellant here, we find it unnecessary to, and therefore will not, explore the full extent of protection to which the adoption, use, advertisement, and promotion of the trademark Creamette may entitle the plaintiff. Only macaroni and spaghetti have been sold in Florida, and, as against the defendants' use of the term as a trademark for the frozen desserts, the plaintiff's rights in this case, where no intentional appropriation or misrepresentation is shown, must be accordingly restricted. If we might concede, as contended, that Creamette is a distinctive, coined word, still, as applied to the macaroni and spaghetti products advertised and sold in Florida, it would not follow that the good faith use of the word by the defendants on a product which it correctly indicates would alone establish unfair competition. A frozen sweet, or dessert, which is not made from the customary ice cream mix, but is similar to it, may well be called Creamette because it is an imitation or substitute of cream. Philco Corp. v. Phillips Mfg. Co., 7 Cir., 133 F. 2d 663, 148 A.L.R. 125; Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958. The word "Creamette", of course, carries well known connotations. We know by one usage, as recognized by the dictionaries, that there is "a commercial use of -ette to form names of imitation or substitutive materials." Furthermore, while Creamette is not generally descriptive of appellan.'s macaroni its use in connection therewith carries one of the well known connotations of cream,—as the best or choicest part of a thing. This is recogniz-ed in some of appellant's advertising in which the macaroni is referred to as the "Cream of Macaroni" and made from the "creamy" hearts of wheat. The same thought has been used by others,—"Cream of Wheat" for a breakfast cereal, and "Cream of Kentucky" for an alcoholic liquor.

We think it true that a name may be arbitrary or fanciful as applied to one or more products, but yet not be entitled to unlimited protection as against its good faith tradename adoption and use upon a product of which, because of its inherent properties, it is plainly and accurately descriptive in ordinary meaning. As applied to such an article it is a non-fanciful word because as thus used it is descriptive. Such a situation is analogous to that considered in Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 183 F.2d 969. This statement may be only another way of expressing the well established rule in such cases that even a "strong" tradename does not grant a monopoly for unlimited use, Philco Corp. v. Phillips Mfg. Co., supra; Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347, 351. In any event, what is sufficient to control this case is the conclusion that the appellant's trade and corporate name Creamette is not so all inclusive as to give the broad monopoly for its use which is necessary to legally require a finding that, in the circumstances here and where no actual or legal fraud is shown,[3] the use of the term on a frozen sweet or dessert product like ice cream is an act of unfair competition which equity should enjoin.

The judgment of the trial Court is

Affirmed.

3. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 60 L. Ed. 713.