**FRUIT GROWERS CO-OP. v. M. W. MILLER & CO. et al.**

No. 9552.

United States Court of Appeals Seventh Circuit.

Nov. 18, 1948.

Rehearing Denied Dec. 16, 1948.

S. L. Wheeler, of Milwaukee, Wis., and Robert P. Stebbins, of Green Bay, Wis., for appellants.

Lougee Stedman, of Sturgeon Bay, Wis., for appellee.

Before SPARKS and MINTON, Circuit Judges and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff brought suit against defendants for infringement of the trade-mark "Sturgeon Bay" as applied to containers of red cherries, and for unfair competition.

Plaintiff, engaged principally in the business of packing, canning and handling red sour cherries, sells its produce in various areas throughout the United States. The defendants include two Wisconsin corporations, of which the other defendant, M. W. Miller is president, manager, and principal stockholder. Defendants are likewise engaged in packing, canning and selling cherries. Both parties have their places of business at Sturgeon Bay, Wisconsin, the county seat and principal city of Door County, Wisconsin.

The complaint alleged that plaintiff owns the trade-mark "Sturgeon Bay," duly registered by its predecessor in the United States Patent Office; that defendants have infringed the trade-mark by placing labels bearing the name Sturgeon Bay in prominent letters on cans containing fresh or processed red sour cherries, and by selling the product so labeled in interstate and intrastate commerce; that, by reason of plaintiff's long experience and great care in conducting its business, the high quality of its cherries sold under the name Sturgeon Bay has become widely known in the United States; that the name has acquired a secondary meaning, so that it has come to be recognized in the market as designating cherries of outstanding quality which, as a result, have commanded extensive sales in various parts of the United States; that, notwithstanding plaintiff's long enjoyment of the registered trademark, defendants have sold red sour cherries in containers, the labels on which bear in prominent letters the name Sturgeon Bay, thereby deceiving and misleading purchasers and consumers into believing that defendants' cherries are sold by plaintiff as Sturgeon Bay cherries and of the same quality as Sturgeon Bay cherries sold by plaintiff and puchased by such consumers; that the cherries so marketed by defendants from the 1945 crop were of inferior quality, by reason whereof the general esteem and reputation accorded to plaintiff's cherries has been injured and plaintiff will suffer further and irreparable injury unless defendants are prohibited from further marketing cherries as Sturgeon Bay cherries. Plaintiff prayed that defendants be permanently enjoined from infringing the trade-mark of plaintiff and from continuing to sell cherries having a label or cover on the container which uses as part of its descriptive matter the name Sturgeon Bay.

The District Court found that the mark "Sturgeon Bay" is merely a geographical name descriptive of the place where the cherries are produced; that the words have not acquired a secondary meaning, and that, therefore, the trade-mark is invalid. However, the court found defendants guilty of unfair competition and enjoined them, (1), from using the name "Sturgeon Bay" in large letters on its labels; (2), from using a picture of the cluster of cherries such as had been used by plaintiff; and (3), from using the words "Sturgeon Bay" on labels printed in letters larger than one-third the size of the letters of the words "All Star" or other brand names of defendants. Plaintiff has not appealed from that part of the judgment holding its trade-mark invalid; the only appeal is that of defendants from the judgment finding them guilty of unfair competition.

Basically, the facts are that, over a period of more than thirty years, Sturgeon Bay cherries have come to be known as high quality cherries grown in the Sturgeon Bay area. Their quality is due, apparently, to the unique climatic and soil conditions in that area. From 1917 to date, various canners, including defendants, have marketed such cherries under the descriptive name "Sturgeon Bay Cherries," in conjunction, however with various brand names. In 1925, plaintiff's predecessor used the words "Sturgeon Bay." Since that time plaintiff has been selling most of its cherries under the brand name of "Sturgeon Bay Brand." Defendants, since 1934, have been selling under their brand name of "All Star Brand," appearing at the top of their label. Underneath this brand name, however, in comparatively large letters, appear the words "Sturgeon Bay" and "Cherries." The name of the packer, "M. W. Miller & Co.," appears near the bottom of the label.

The crux of the unfair competition charge is that the words, "Sturgeon Bay" appearing on defendants' label is confusing and deceptive in that consumers are led to believe that defendants' cherries are in fact plaintiff's "Sturgeon Bay Brand" cherries. The only parol evidence offered in support of confusion is found in the deposition of one Vivian M. Brown and the testimony of one Dorothy Jean Bingham. Miss Brown, a dietitian at a hospital, is in charge of buying food for her employer. She testified that she ordered "Sturgeon Bay Cherries" from a salesman for a wholesale grocer, specifying "Sturgeon Bay Cherries"; that she did not "especially" look at the cans when she placed them on the hospital shelves; that at the time she placed the cherries on the shelves she believed they were Sturgeon Bay Cherries; that she thought there were two kinds,—one packed by the Fruit Growers and one by Reynolds; that she thought she bought the Fruit Growers; that she had merely ordered Sturgeon Bay Cherries; that, when she ordered them, she asked for Sturgeon Bay Cherries; that she didn't ask for Sturgeon Bay Brand; that she had never specified Sturgeon Bay Brand. The testimony of Dorothy Bing-

ham, a housewife, was that the brand names she purchased were Sturgeon Bay Fruit Growers, or "Sturgeon Bay" cherries; that she had bought at times, "All Star Brand," and "Reynolds Brothers," that in 1945 she purchased some No. 2 canned cherries; that they were labeled; that at the time of the purchase she did not examine the label closely; that she went into a self-service grocery, picked the cherries from the shelf, took them to the counter, carried them home and put them in her cupboard; that several weeks later she noticed that the can was the "All Star Brand" of Mr. Miller; that at the time of the purchase the can was on the middle shelf, below eye level; that she was looking for fruit, which was very scarce at that time; that the name "Sturgeon Bay" and the red fruit on the label took her eye as she was scanning the shelves, and that she then "just picked the can off the shelf."

Upon this evidence, the District Court found that both women "purchased canned cherries packed by defendants and bearing their label, believing, as the result of defendants' manner of use of the name 'Sturgeon Bay' that they were purchasing cherries packed by plaintiff."

■ We think the finding is not supported by the evidence. The first witness clearly, did not arrive at any erroneous belief because of defendants' manner of use of their label. On the contrary she did not order the cherries on the basis of any label at all but ordered them from a salesman of a grocer. When asked if she looked at the cans when they were placed on the shelf, she said, "not especially." When asked "what made you think you had Fruit Growers Co-op. cherries" she replied, "because I had ordered Sturgeon Bay Cherries." Clearly, such evidence does not show confusion or deception because of defendants' use of the words "Sturgeon Bay" on their label. She merely asked for Sturgeon Bay Cherries, and that is what she got. If she thought she was getting plaintiff's "Sturgeon Bay Brand," her confusion was not due to anything appearing on defendants' label.

Mrs. Bingham was asked, "at the time of the purchase, did you examine the label

closely at all?" She replied, "No, I didn't." She then went on to say that she "was looking, as usual, for fruit, which was very scarce at that time, and the name 'Sturgeon Bay' and the red fruit on the label took my eye as I was scanning the shelves." She testified that when she took the can from her cupboard to open it she noticed it was not plaintiff's label. Once again, we fail to see how it could be said that defendants' label deceived the consumer. As fruit was scarce, the witness was surprised to see cherries in the store. She purchased them without examining the label closely, but when she started to open the can she readily saw that it bore defendants' and not plaintiff's label. This is far short of confusion or deception.

 The District Court has made a final adjudication that plaintiff is not entitled to the exclusive use of the descriptive words "Sturgeon Bay." This means that defendants may use the words in any manner they choose, so long as, they do not deceive the public. As the court said in Allen B. Wrisley Co. v. Iowa Soap Co. et al., 8 Cir., 122 F. 796, at page 798:

"* * * The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival that neither its name nor its dress will probably deceive the public or mislead the common buyer. He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacture or the ownership of the articles he presents. His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another. *One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition.*" (Emphasis added.)

In Reynolds & Reynolds Co. v. Norick et al., 10 Cir., 114 F.2d 278, at page 281, the court said:

"The grievance of plaintiff is that defendants simulated its forms, and in doing so engaged in unfair trade practice. *Deceit is the basis of an action of this character.* The principle underlying unfair trade practice cases is that one manufacturer or vendor is palming off his merchandise as that of another, Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Elgin National Watch Co. v. Illinois Watch [Case] Co., supra [179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365]; Standard Paint Co. v. Trinidad Asphalt Co., supra [220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536]; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; * * *.

"These forms are not protected by copyright or patent. In the absence of such protection, plaintiff has no exclusive right to their use. They belong to the public and are open to use by defendants or any one else, and the enjoyment of that right by defendants carries with it only the obligation to identify their products in such manner that they will not reasonably be taken for those of plaintiff. Kellogg Co. v. National Biscuit Co., supra. And it is not necessary that they so designate their merchandise that careless or indifferent buyers will not fail to know their source. Instead, they are required only to mark or designate them in such manner that purchasers exercising ordinary care to discover whose products they are buying will know the truth and not become confused or mistaken. Allen B. Wrisley Co. v. Iowa Soap Co., 8 Cir., 122 F. 796; Turner & Seymour Manufacturing Co. v. A. & J. Manufacturing Co., 2 Cir., 20 F.2d 298." (Emphasis added.)

 The mere fact that defendants prominently display the words "Sturgeon Bay" on their labels, whereas other canners who are competitors of plaintiff use the words in a smaller type does not mean that defendants have been guilty of unfair competition. As previously noted, the testimony of Miss Brown and Mrs. Bingham fails to disclose confusion. More-

over, we fail to see how any purchaser, exercising ordinary care, could be deceived. The only similarity in plaintiff's and defendants' labels is that both use the words "Sturgeon Bay." At the top of defendants' label, their brand name, "All Star Brand" appears in prominent letters, and at the bottom of the label the packer's name appears. While neither the brand name nor the packer's name is in as large letters as the words "Sturgeon Bay," they are certainly prominent enough to be noticed by the ordinary purchaser. In fact, the evidence of plaintiff's own witnesses discloses that as soon as they looked at the label they experienced no difficulty in ascertaining that the cherries they had purchased were defendants' and not plaintiff's product. The two labels are in no wise similar. Plaintiff's is red; defendants' have a predominant blue back ground. Plaintiff's is labeled "Sturgeon Bay Brand"; defendants' "All Star Brand," "Sturgeon Bay Cherries"; plaintiff's lettering is white; defendants' yellow and light blue. The only, similarity is that both call for Sturgeon Bay Cherries. Upon that name, as the court found, no one can have a monopoly. The language of the Supreme Court in Canal Co. v. Clark, 13 Wall. 311, 80 U.S. 311, 20 L.Ed. 581, is pertinent: "If the public are led into mistake, it is by the truth, not by any false pretence. If the complainants' sales are diminished, it is because they are not the only producers of Lackawanna coal, and not because of any fraud of the defendant." See also Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. As this court said in Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 273, 45 L.Ed. 365: "The word 'Elgin' is and has been for very many years the name of a well-known manufacturing city in Illinois. The factory and business of appellees were located at Elgin, and in describing their watch cases as made there it is not denied that they told the literal truth so far as that fact was concerned, and this they were entitled to do according to the general rule. Obviously, to hold that appellant had obtained the exclusive right to use the name 'Elgin' would be to disregard the doctrine characterized by Mr. Justice Strong in Delaware & H. Canal Co. v. Clark, as sound doctrine, 'that no one can apply the name of a district or country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation.'" We quote again from Canal Co. v. Clark, supra: "Could such phrases, as 'Pennsylvania wheat,' 'Kentucky hemp,' 'Virginia tobacco,' or 'Sea Island cotton,' be protected as trade-marks; could anyone prevent all others from using them, or from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many." See also Coffman v. Castner et al., 4 Cir., 87 F. 457.

We conclude from the decisions that there was failure of proof of any unfair competition. The evidence is clearly within that of certain decisions of this court. Wilhartz v. Turco Products, 7 Cir., 164 F.2d 731; Soy Food Mills v. Pillsbury Mills, 7 Cir., 161 F.2d 22.

That part of the judgment enjoining defendants "from using the picture of the cluster of cherries such as had been used by the plaintiff" was based upon the finding that defendants had wrongfully used a cherry cluster, a vignette, on the labels on their 30-pound cans of cherries copied from the label plaintiff used on its 30-pound cans. Yet plaintiff in its complaint and during the trial complained only of defendants' use of the words "Sturgeon Bay." It never averred that the use of the vignette was wrongful and asked for no relief with reference to the design. Rather, it prayed that the court enjoin infringement of the trade-mark and from using a label "which uses as a part of its descriptive matter the name Sturgeon Bay." In fact, the label around which the trial centered, defendants' No. 2 can label, does not contain the vignette. In its brief and in oral argument before this court, plaintiff stated that it is not complaining about the dress of defendants' label, but that defendants

were guilty of unfair competition because of their prominent use of the words Sturgeon Bay. Since the parties have never been at issue concerning the wrongful use of any vignette, we think that it was improper for the trial court to enjoin defendants from using any such design.

Defendants have argued other alleged errors upon the part of the District Court, but, in view of our conclusions, it is unnecessary to discuss them.

The judgment of the District Court is reversed.