CHAPPELL et al. v. GOLTSMAN et al.

GOLTSMAN et al. v. CHAPPELL et al.

No. 14040.

United States Court of Appeals
Fifth Circuit.

June 30, 1952.

Rehearing Denied July 24, 1952.

Strum, Circuit Judge, dissented.

Henry L. Jennings, Francis H. Hare, Birmingham, Ala., James J. Carter, Montgomery, Ala., for appellants.

John C. Godbold, Truman Hobbs, Montgomery, Ala., Beekman Aitken, New York City, for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that the use by defendants of the name "Bama" in connection with a blackberry wine bottled and sold by them infringed plaintiffs' trade-mark, "Bama" which they had registered in 1926, and had used for more than 20 years, as their trademark for products, blackberry jams and jellies, plaintiffs, on October 17, 1949, brought this suit for an injunction, for damages, and for an accounting of profits.

As appellants state it in their brief: "The gist of the complaint is that defendants, who began the bottling and sale of blackberry wine in the Fall of 1948, chose as their trade-mark the word Bama which word plaintiffs had employed to designate their blackberry jams, jellies and preserves since 1924, thereby leading purchasers of plaintiffs' products to think that plaintiffs had gone in the wine business or that defendants' business was in some way connected with or sponsored by plaintiffs, thereby damaging plaintiffs' business and reputation and in violation of the principle

that a name like a reputation and a face is the symbol of its owner and another can only wear it as a mask."

Though the answer went into greater detail,[1] its gist was a denial of all of plaintiffs' charges of unfair competition and of confusion of product and source, and the affirmative defenses that "Bama", a contraction of Alabama was a geographic name and not subject to exclusive appropriation as a trade-mark and that being at best a weak mark, plaintiffs are entitled to protection of it only for the goods they sell.

There was a counter claim[2] for cancellation of plaintiffs' registration because invalid as the nickname for Alabama, and for damages against plaintiffs for damage caused to defendants by plaintiffs' claim to exclusive use of the word "Bama".

The suit dismissed by the district judge[3] on February 1, 1950, on motion of defendants without any hearing on the merits, and the cause appealed to this court, the judgment of dismissal was reversed and the cause remanded for a trial on the merits. This court, pointing out in its opinion[4] that the case was essentially a fact case and that it could not be properly determined without a full hearing on the issues tendered by the complaint and answer, sent the case back specifically for such a hearing.

Tried again, this time on the facts, each side being afforded full opportunity to offer, and offering, many witnesses and much documentary evidence, there was again a judgment for defendants based on a careful opinion,[5] followed by full and complete findings of fact and conclusions of law. These fully exonerated defendants of the charges of deliberate and intentional pirating of plaintiffs' trade-mark, and of unfair competition of any kind. They also found that there was no basis in the evidence for the claim that substantial[6] confusion or damage had resulted, or would result, from the complained of use by defendants of the name Bama in the sale of their wine, and that no case for equitable relief had been made out. From the judgment denying plaintiffs the relief prayed for by them, plaintiffs have appealed, while defendants have appealed from so much of it as denied their counter claim.

Here each side presenting its argument in a fashion calculated to generate more

---

1. As affirmative defenses the answer sets forth:
   1. Lack of competition—plaintiffs being in the food-product business and defendants in the wine business.
   2. That Bama is geographic in significance and that defendants are using it to indicate that their wine is made from Alabama blackberries.
   3. That the defendants' labels are so different from plaintiffs' in color and appearance that there could and would be no confusion.
   4. That Bama is the nickname of the State of Alabama and that plaintiffs have no right to its exclusive use.
   5. The trade-mark Bama has been used to such an extent by others that it does not signify plaintiffs' products to the exclusion of others.
   6. That the goods of the parties are of different descriptive properties.

2. Based upon Sec. 37 of the Lanham Act of 1946, 15 U.S.C.A. § 1119.

3. 88 F.Supp. 784.

4. 186 F.2d 215, 219.

5. 99 F.Supp. 970.

6. Cf. Pulitzer Pub. Co. v. Houston Printing Co., D.C., 4 F.2d 924, at page 927, where, after setting out the principles controlling cases of this kind, the court said of evidence that some confusion as to the paper existed in the news stands;
   "Nor, in this decision, have I overlooked the testimony that some confusion exists in the news stands, which sometimes requires clearing up. Equity sits for substance, and not for shadow, and no chancellor could ever justify the issuance of its most gracious writ because of the testimony that in some instances confusion had resulted in the initial calling for a paper published in a different state under a different date line, having in every way a distinctive make-up, especially where the paper complaining was claiming a right to exclude another from a field which it had itself had not occupied. These incidents are the very straws, and straws are chaff, and while, in the popular adage, straws may 'show the way the wind blows,' equity has never yet issued its writ to protect either a straw man or a house of straw, for equity saves the wheat and fans the straw." Affirmed 11 F.2d 834, 836.

heat than light, sounds its trumpet furiously on both fact and law, and, like a very Orlando Furioso advances to the fray as though the very thought that it might be wrong, the other side right, was a betrayal of right reason.

This is an unreasonable view. The law is not in confusion. The many cases each side puts forward can in the main be reconciled. In addition, the law of this case was settled on the first appeal, and we have no disposition to depart from or question the holding there made, that the case was not one to be determined on summary judgment and as matter of law, but to be heard as a fact case and determined by the trier upon and after hearing the facts. The law for this case having been thus settled by and in this court, it will serve no useful purpose for us to discuss and analyze the cited cases[7] or to enter upon a general disquisition as to the applicable law, especially since we find ourselves in general agreement with the statement of it made by the district judge in his opinion. Now that, under the law of the case as laid down in this court on the former appeal, the case has been tried by the district judge and he has made findings, our function, and our sole function, is to carefully examine the record, the findings, and the attacks made upon them, and, in the light of that examination, determine whether, as claimed by appellants, the findings are, or as claimed by appellees, they are not, clearly erroneous.

We have made such a study of the findings and record, and, as a result thereof, we are of the clear opinion that the findings may not be set aside as clearly erroneous. Indeed, we are in no doubt that while there is evidence which would support findings to the contrary of those made, the record furnishes ample support for the findings and conclusions on which the judgment is based. We are of the opinion, though, that, in the interest of making assurance doubly sure that no confusion resulting in injury to plaintiffs will occur from the use of the name "Bama", the judgment should be modified by adding a requirement that defendants strike from their labels, wherever it appears, and cease and desist from the use of, the word "Brand". As so modified, the judgment will be affirmed.

Modified and affirmed.

STRUM, Circuit Judge (dissenting).

While I agree that appellees should be required to strike the word "Brand" from their labels, I am also of the opinion that this relief is not broad enough.

It is clear to me that in the coloring, lettering and general format of their label, appellees deliberately contrived to simulate the general appearance of appellants' label and thus subtly create the impression upon the ordinary, casual shopper that their blackberry wine is produced by the same firm which produces "Bama" blackberry

7. Some of those cited by appellant:
Aetna Casualty & Surety Co. v. Aetna Auto Finance, 5 Cir., 123 F.2d 582; Coca-Cola v. Snowcrest Beverages, 1 Cir., 162 F.2d 280; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774; Greyhound Corp. v. Goberna, 5 Cir., 128 F.2d 806; Latouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Vogue Co. v. Thompson Hudson Co., 6 Cir., 300 F. 509; Yale Elec. Corp. v. Robertson, D.C., 21 F.2d 467; Yale Elec Corp. v. Robertson, 2 Cir., 26 F.2d 972.
By appellee:
Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, 4 Cir., 165 F.2d 693; American Automobile Ins. Co. v. American Auto Club, 9 Cir., 184 F.2d 407; Burger Brewing Co. v. Maloney-Davidson Co., 6 Cir., 86 F.2d 815; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971; Continental Ins. Co. v. Continental Fire Ins. Ass'n, 5 Cir., 101 F. 255; Continental Paper & Bag Corp. v. Jacksonville Paper Co., 231 Ala. 400, 165 So. 216; Creamette Co. v. Conlin, 5 Cir., 191 F.2d 108; Elgin Natl. Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Fidelity Bond & Mtg. Co. v. Fidelity Bond & Mtg. Co. of Texas, 5 Cir., 37 F.2d 99; Fruit Growers Co-op v. M. W. Miller & Co., 7 Cir., 170 F.2d 834; Pulitzer Pub. Co. v. Houston Printing Co., 5 Cir., 11 F.2d 834; Standard Brands v. Eastern Shore Canning Co., 4 Cir., 172 F.2d 144.

jam, jelly, and other products marketed in glass jars by appellants.

The label used by appellees is calculated to, and has, misled substantial numbers of shoppers, of which there is convincing proof. A visual comparison of the two labels confirms their tendency to confuse. The ordinary shopper identifies a product by the color and general appearance of its label, as well as by prominent words, symbols or pictures thereon, not by the fine print at the bottom of the label. Such a shopper would be easily misled by appellees' label into thinking he was buying appellants' product. He would not only see the word "Bama" prominently displayed on both, but the style of lettering, the coloring and general appearance of the two labels are too similar to be the result of mere coincidence.

Thus, appellees not only confuse the public, but unjustifiably appropriate to themselves a share of appellants' good will and reputation, built up over years of dealing with the public. They also gain an unjust advantage from the thousands of dollars of advertising money spent by appellants in acquainting the public, not only with the trade-mark "Bama," but also with the general appearance of their label as well.

While I agree that the trade-mark "Bama" is perhaps a weak one, even when registered, I also think that a clear case of unfair competition is made out by this evidence, and that for the benefit of both the public and appellants, appellees should be enjoined from the use of their present label, which is clearly confusing. Even if appellees are entitled to use "Bama" on their blackberry wine, they could, and should, devise a label more readily distinguishable from that used by appellants on their blackberry jams and jellies, which use long antedated appellees' label.

I therefore concur in the order of modification, but dissent from the judgment of affirmance.

Rehearing denied; STRUM, Circuit Judge, dissenting.